The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw not, and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. Welcome to the Fourth Circuit. The panel this morning, to my right is Judge Harris, Judge Heitens to the left. We have four cases for argument today. If counsel are ready to proceed, we'll begin with the case of Chollet v. Scott Brabrand. I probably butchered those names a bit. It's pretty close, Your Honor. Good morning, and may it please the Court, George Clark for appellants. You're sitting in your family home, on your favorite armchair, well worn by generations. Refrigerator stocked, your kids' bedrooms are festooned with the current fad of cartoon characters. Even the cat's happy. But the government says you need to leave. It's in the interest of public health. Not necessarily your health, but the community. Nobody doubts that that's a taking. A fundamental right is taken away from you, totally disrupts your life and the lives of your children. Of course it's for a public purpose. Is that the measure of a taking if a fundamental right is taken away from you? I thought it had to be private property. It has to be property. It has to be private property. It has to be private property. So your analogy is the school your private property? Access to public school is private property. Can I ask you a question that strikes me as getting to the heart of this? Has anyone ever suggested that an expelled student has a takings claim? They may well have a due process claim. They may have a substantive due process claim. Do you know any court has ever said that an expelled student has a takings claim? They have never said that, Your Honor. Isn't that pretty significant considering that schools have been expelling kids for decades? Someone probably would have thought of it. If that could be viewed as a taking, someone presumably would have thought of that by now. Well, it's due process, Your Honor, and it's definitely a property claim. I agree you'd have a due process claim here too, but you didn't bring a due process claim. You brought a takings claim. Well, the question, I think practically the question is, is there a difference in whether something is private property for purposes of the due process clause and for purposes of the takings clause? That's not the question. The due process clause doesn't require private property. Only the takings clause does. But Goss v. Lopez, the Supreme Court said that a student's right to education is private property. Very clearly the Supreme Court said that. No, they said there's a protected property interest. It is a property interest, and it must be their property interest, Your Honor. I mean, it can't be anybody else's. So what is your answer to the expelled student? Does he, in fact, have a takings claim? I think he could have a takings claim. Snow days? What about snow days? Takings claims? I think at some point there's enough flexibility in the system that you're not removing the entire right that someone has, and there's a lot of... There are partial regulatory takings. Sure, but, Your Honor, that's relatively narrow, and those rules are, you can have a lot of regulatory control over something in the takings case, and you don't take it. The snow day does, in fact, deprive you of a private property interest, but you might still, for some other reason, not be entitled to compensation. I think that's right, Your Honor. I mean, I think it is, you have this right, and the question is, was that right actually taken from you or not taken from you? And when I, I think the practical question here for me is, does a right that is given to you by the Constitution of Virginia, does that mean anything? Well, it means you have a protected due process claim. But the problem with the due process claim, Your Honor, is, think about COVID, this emergency just happened. It takes years to go through that process. I'm sorry, the fact that, the fact that you might prefer the remedies available or the time frame under one clause of the Constitution as compared to another, I don't think that means that you necessarily, therefore, should consider this a taking clause case and not a due process case. But there's no enforceability. The reality is that if it's just a due process claim, there's no enforceability. You wait, the school board can do whatever they want, eventually you come back in to school, so what? No harm, no foul. So you mentioned a right under the Virginia Constitution. One obvious option that occurs to me is, if you think these schools were violating your Virginia constitutional rights, you could have sued under the Virginia Constitution, right? Could have, Your Honor. And why wouldn't you? I suspect I know the answer. We viewed this case as a taking case. I suspect the reason is that I suspect there's no plausible way the Supreme Court of Virginia was ever going to hold this violated the right to education under the Virginia Constitution, because most state courts, most states that have rights to fundamental rights to public education have said there's considerable flexibility in how that's provided. And I suspect that you could have never gotten retrospective relief under the Virginia Constitution either, because there would have been sovereign immunity and the only relief you could have gotten would have been forward-looking, equitable relief. Your Honor, I think the question is, is there a fundamental right under Virginia law for a child to have an education? It just seems a little bit weird. You know, this is like Paul versus Davis adjacent to me. It just seems a little weird to say that, if by hypothesis, the problem is that the remedies you could get in state court for violations of the state constitution are not the remedies you wanted, that you can then turn around and sue in federal court under the federal constitution. I mean, like, there is a whole line of cases that say the federal constitution is not a workaround to enforce state law rights that otherwise aren't enforceable in state court. And I'd agree with that, Your Honor. I think the question is, is it a take? If it is a taking, though, then it's definitely governed by the federal constitution. One hundred percent. And that's what we're trying to figure out. And I think the question is, do you think that you can have a fundamental property right? We know those things are true. It is a fundamental right under Supreme Court precedent in Virginia. It is a property right under Goss versus Lopez. But it's not somehow vested enough to be a property right for takings clause purposes. The differentiation, though, may well be, because you've identified the issue, and I appreciate you going directly to it, but you have this issue before us, whether the right to a public education in the state of Virginia is a right that's recognized under takings clause. You refer to a fundamental right. I'm not sure a fundamental right is what's protected under takings clause. It is a private property right. That's different. Do you not agree? I agree with you, Your Honor. I think Goss versus is not just a fundamental right. It's a private property right. In order to be able to get there, you have to satisfy what would in fact constitute a vested private property interest. I agree with that, Your Honor. As of today, I don't know if any court has ever said that this particular interest is one that's under the takings clause. Do you? There isn't one, Your Honor. Not one? Not one. And since this country was founded, or since Virginia had its Constitution. That's correct, Your Honor. So why should we now, out of one of the better terms used by one of my colleagues, out of whole cloth, create such an opportunity for you now? Well, I would say to you, Your Honor, COVID was a very unique circumstance. And taking away somebody's right to an education wasn't really... But expelling kids is not a unique circumstance. It's been going on for decades. But expelling kids, Your Honor, there is typically a pretty fast response time for that. That was not the situation here. It was impossible for there to be a fast response time. The school district would not let this child back in, these children back in, would not let them back in because of this health emergency. It wasn't like you could go... Why couldn't you have gone to court and sought injunctive... I'm not saying it would have succeeded, but why couldn't you have gone to court and sought injunctive relief? People bring... I think we can take judicial notice of the fact that lots of people sought fast-moving injunctions during the pandemic against aspects of lockdown that they claimed violated their rights. Lots of people sought emergency relief. I agree. Why couldn't your clients have done that? Your Honor, that is possible that by the time we were engaged and we went through this entire process, we could have done that. That's possible. The reality is by the time we got engaged and things started to move and anybody was doing anything, we were already well into this process. And I think the question is not could we have done something else, but is what we did, and I think... Is what we did enforcing a property right? Well, but I guess something else seems relevant in this regard. One of the arguments you make in your brief, which is a fair argument, which is like if you don't recognize a takings claim here, there's literally no consequence for violating this right. That is a pretty prominent argument in your brief, is that if you don't give retrospective damages here, schools can do whatever they want and there's no remedy. I mean, I guess I've identified something you could do, which is you could bring a claim while it's going on and seek injunctive relief. That's something. And now there's maybe reasons why you didn't do it, but it seems to me it's a pretty strong counter-argument to the unless we have this takings right, there's literally nothing you can do. I think after the fact, when you had a global pandemic, which I think we need to bring ourselves back to that, a global pandemic, where even courts were shut down sometimes.  Not from hearing cases. This court was open. The district courts in this circuit were open. There was never a point at which the courts were shut down. Your Honor, the practical reality of it was that there was not real movement in a lot of different legal systems. I mean, this is what I do for a living, too. And I know that there was a lot of restrictions. Let me focus you, really, on alternate opportunities. We all tend to think if there's a wrong, there should be some remedy. Really, it's not our question here today. The only question is, is that remedy under the takings clause? If it's not under the takings clause, we don't have to explore, is there some other way you could have done this? That's gratuitous because we tend to agree with you that if something's wrong, there should be some way to explore it. Judge Heiden has rightfully pointed out there may be other avenues to do it. But ultimately, the only issue before us, does this arise under the takings clause? Is it a private vested property right that is cognizable under the takings clause? Your Honor, I completely agree with that. That's exactly the question. Your answer is yes, but, I mean, you're the only one that's saying it. Well, I've got Goss v. Lopez, the Supreme Court, saying it's a private But it is property. Can I ask you a question? It's sort of about the posture of this case. I understand you're having a hard time. That's what we do. But I understand your argument that under Goss v. Lopez, there is a property interest under the due process clause. It's a fundamental right, and it follows from that that there is a private property interest under the takings clause. But if you would just assume for a minute, hypothetically, I don't agree with that theory. Did you allege in your complaint or plea any other theory under which this might be private property? Any other theory? I don't think it could be private property under any other theory, Your Honor. I think that is the basis for it being private property. And, again, just to be clear, it is access to education. You have, and I'm not going to go into facts a ton, you have severely autistic children who need a routine, who need to be in a space that they're familiar with to learn. And defendants took that space and allowed other people to use it. Okay? And so that is the fundamental, that's our fundamental factual argument, not to waste a lot of time on facts. The takings would apply regardless of what their state of being would be. This would apply to any child whatsoever. Is that correct? Or does it matter that this particular child had special needs? Oh, go ahead. I think the question is practically for many children there was no taking because virtual education worked for them. So what was taken? Nothing was taken from them. Right? Would they have liked it to be a different way? It's fine.  But when you have kids who were the access to Well, it could come up with various other reasons to say that virtual was not the same as being in person. Maybe not as stark, but nonetheless, it could say that there are certain children, just they might respond better in a class. The discipline would be different. They could maintain, if you have such a claim, such a claim, don't you think? Your Honor, I'm sure somebody could come up with something. But I think at the end of the day, there is this flexibility on what is a taking and what isn't a taking. And there's a lot of case law in that space, right, where restrictions, basic restrictions for easements and things like that sometimes are taking, sometimes they aren't regulatory. There's a lot of leeway in that space. Whereas if you have something completely taken away and these kids really needed this and were extremely disruptive, that's a bit different. Why isn't that just an IDEA claim? That seems like a classic IDEA claim, right? I mean, based on the facts you allege, it seems like you have a plausible IDEA claim, which is that schools, in the course of trying to deal with the global pandemic, had to decide which students could go to school in person and which ones couldn't. And they decided, for reasons that may have seemed sufficient to them, to not allow kids with certain disabilities to go to school for reasons that they thought. And you might say there is a federal law, the IDEA, that says you can't do that. This just feels like a classic IDEA claim. I mean, that's not the remedy we're asking for, Your Honor. Because you can't get compensatory damages under the IDEA either, right? That would be correct, Your Honor. But you can get compensation for remedial services, right, under the IDEA? You can. And to the extent that the government actually was providing those, then that would be mitigation. No, no, no. If a parent who is deprived of those services goes out and pays for them out of their own pocket, one possible remedy under IDEA is to get paid back for those sometimes. In theory, Your Honor. Sometimes in practice. That is an available remedy. It is an available remedy. Not necessarily in practice. Fair enough. I guess the only other thing that I would cover, and I think we've had a full discussion about this, is this lack of measurable value. Okay? The district court focused on this not being measurable value. We try complicated cases all the time in front of district courts on very, very obscure questions of what value is. From tax cases to patent cases to copyright cases to general damages cases. Will it be complicated to figure out what the value is? I have no doubt it will be complicated to figure out what the value is. But I also have no doubt that Judge Schrodinger is perfectly able to figure out what the value is. We'll hear from your other counsel and we'll give you some time to respond. Thank you. Thank you for your honor.   May it please the court, John Cafferkey for the appellee, Dr. Scott Brabrand. With me at counsel table is my colleague, Ian McElhaney, who's been involved throughout this case, which has some history. It's clear that members of the panel have fixed on many of the issues that we raised in the briefing. So rather than repeat that, I want to hopefully respond to a couple of things that came up in your questioning and also make a couple or emphasize a couple of additional points. Where is your case? Come again? It's a pretty simple case in terms of the legal side of it. I mean, we can dance around it, but the issue comes down straightforward. Is this a claim cognizable under the takings clause? That's all we need to hear because that's all we're going to decide based on this unless we go somewhere different. And I would submit to you that the Ninth Circuit's decision in the Zion case, which similar in many respects to this one, is the only at least appellate level decision that we have been able to find on this issue. And the analysis tracks very much many of the points that we made in terms of whether it is this is the type of right, the property right that is conferred by state law that's one of the conventional types of property rights that's recognized by state law. Can I ask you about the one place in which the Ninth Circuit's approach seems hard to score with what we've said? So one of the things the Ninth Circuit said is that it's not vested. The problem is that this court seems to have said several times that constitutional rights are necessarily vested. So the Ninth Circuit draws this vested, non-vested distinction. The problem is, albeit I think in the due process context, but there's several statements from this court that seem to say constitutional rights are by definition vested. So if we're going to write an opinion that says it's not vested, we have to figure out what we're going to say about our decision saying there is no such thing as a non-vested constitutional right. I would focus, I think, our understanding and interpretation of what the Ninth Circuit said there is simply that it is not the type of property right that is recognized for purposes of the takings clause, rather than it's. But they did use the language not vested, right? Fair enough, Your Honor. And the jurisprudence in Idaho also is to the effect that they don't describe the right there, and this is a point made in the briefing, as a fundamental right. But when you look actually at what the case law that they rely on there, they're really saying actually the same thing as the Scott versus Commonwealth case, one that's talked a lot about in the briefing, which is that what you have is a right to have the state general assembly or the state legislature develop a system of free schools. You don't have an individual right, and certainly you don't have a property right. Just one more question about this vesting point. Sure. You agree the district court also used the word vested? Like one of the things the district court said is that their rights weren't vested. The decision under review. Fair enough. I wouldn't, I don't think our position depends, frankly, upon whether the right would be considered vested, but simply whether it's recognized as a property right under Virginia law, either statutory or constitutional law. Well, it's definitely a property right for purposes of the due process clause, right? I wouldn't disagree with that. I'll just give you a real tangible example. There are constitutional limits on a school. Assuming there is a due process right to education, there are due process limits on your ability to expel a student or to suspend it. Is it ten or four? How long can you suspend? Ten days. And, Your Honor, Mr. McElhaney and I just had another case in federal court in the Eastern District on exactly that issue. I wouldn't disagree. It's clear that for purposes of the due process clause, students in Virginia have a vested property interest in public education. I wouldn't disagree with that. That's the reason you have hearings for expulsions and suspensions. Correct. And there's also specific statutory protections for that as well. One thing I did want to, so I've answered that question. One thing I did, there's a lot in the complaint, and, Your Honor, to get to your question or to several of your questions, even though it's true that the three plaintiffs here were all students with disabilities, the IDEA, the fact that they are, is completely irrelevant to the legal analysis here. In fact, as we pointed out, one of the three plaintiffs actually pursued a separate IDEA claim in first the administrative hearing and then in federal court, Joint Appendix 151, I think the footnote recognizes that. So there were a lot of other avenues here. The most straightforward one would have been an IDEA claim. It seems like a classic IDEA claim, right? Correct. And, in fact, there are, over the last four years, in fact, we have another, there'll be another argument to this court on Friday concerning IDEA, among others, IDEA claims in the context of school shutdowns for COVID reasons. But the fact that these students were students with disabilities is completely incidental to the question of whether they have rights, not to have to, that providing virtual education to them is a deprivation. He says really it's because of their disabilities that they're unlike other children who may not experience the kind of negative situation with a virtual learning, that because of their particular status and who they are, they are not able to benefit from this educational process and, therefore, it is a taking for them. Well, it's... Granted, the IDEA provides a remedy. It seems like there's definitely a cross-section here because that's pretty much what happens in regular school situations where you bring a claim like that, too. Well, right. It could be a claim under IDEA. It could also be a claim under Section 504 of the Rehabilitation Act. It could conceivably be, that's a discrimination claim, and that's not what you have here. You maintain that vested under the Taken's Clause is different than vested with regard to a due process claim or a zoning claim. Is it different? Well, what's different is the nature of the right. As has been said already, there are many cases involving procedural, and this Court's jurisprudence and that of all the circuits in the Supreme Court are to the effect that there's a fundamental difference between rights that are protected under the procedural due process clause versus the Taken's Clause. So the nature of the right is different, and for purposes of Taken's jurisprudence, much narrower. It has to be a property right. It has to be private. And it has to be taken. And as we've said in our arguments, none of those three prongs are met here. As to the taking virtual provision or virtual education, it may not be perfect. For a lot of students, it wasn't perfect. But it wasn't a complete deprivation of education. And under the Virginia system of providing education, in the first instance, it's up to the Board of Education and then the General Assembly to decide what the standards of quality are going to be. I'm not saying that we would recommend that. And if people thought that violated the Virginia Constitution, they could challenge that in Virginia State Court. Absolutely, Your Honor. So there's not a taking. It's not public. Excuse me, it's not private. And it has been stated already, the public nature and the public control over education in Virginia is at all stages, from the creation by the General Assembly and the Virginia Board of Education, to the implementation by local school boards, to the regulation of that by the General Assembly. I live with it every day. Title 22.1 is the General Assembly's regulation of the education process, to the Virginia Constitution, Article 8, Section 7, which says that local school boards have essentially plenary control over the provision of education, to the General Assembly or the Virginia Board of Education could change the standards of quality. That would be a regulatory action that would not deprive students, we would say, of a property right under the Takings Clause. And the last section of the argument and the briefing that counsel makes, particularly in the reply brief, is a number of policy arguments. But I would submit to you, think about the implications. Let's stick with the law here. Fair enough. Let me ask you to pause a moment. We've explored that in the briefs. I want to ask my colleagues something. I think we are fairly satisfied in terms of where your argument is going. I appreciate it. Understand, I don't want to speak the one word too many. We've addressed it. There's a danger in that. Thank you, Your Honor. Thank you. Mr. Clark, you have time to respond. Thank you, Your Honor. So I'd like to go first to Zion and the question of what Zion found and said. If we go to 1143 in Zion, the published version, it very clearly says, By its very terms, the Constitution of Idaho does not on its own create the public school system. It's a mandate to the state through the legislature to do so, citing Thompson v. Engelking, which is the Idaho Supreme Court case that very clearly says that the Idaho Constitution, Quote, does not establish education as a basic fundamental right. That's what they're relying on. They're relying on that Idaho Supreme Court case, which is directly contrary to the Virginia Supreme Court case that says, Quote, education is a fundamental right under the Virginia Constitution. So when I look at this, I say, are we, we've also got the Bill of Rights, the Virginia Bill of Rights, Section 15, Article 1, Section 15. But I want to make sure we're talking and saying, I can let you continue, but the differentiation I'm seeing here, and maybe my colleagues might agree or not, is you keep referring to a fundamental right. That's not what's necessary in order to be under the Takens Clause. You need a vested private right. I agree with that. Don't you agree that's different in character than just simply the broad fundamental rights covers a lot of things, but a vested private right is a bit more specific, a little narrower, wouldn't you say? Your Honor, we're lawyers. We deal with words all the time. But those words are important because that's what's necessary for you to get a claim under the Takens Clause. I understand we deal with different words, and sometimes we go back and forth, but those are pretty, pretty straightforward words. Well, I would say I've got Goss saying I have a private property right. I've got the Supreme Court of Virginia saying. Where does Goss say that? Private. It says it's a property. It must be a student's property right. No, no, no, no, no, no, no, no, no. So tell me where in Goss it says. It doesn't use the word private, Your Honor. That seems like a really important difference. But it can't be a different kind of right. It's their right. But the word private, I mean, we're all kind of textualists now, and the word private appears in the Takens Clause. It does, Your Honor. It doesn't appear in the Due Process Clause. So why do you think it doesn't make a difference whether the property interest issue is private? I don't think it doesn't make a difference, Your Honor. I think when Goss is talking about a student's right relative to the education system, how can that be anything other than their right? And it must be private. It's private to them. It's not some abstract right that isn't theirs. They're the ones that got kicked out. They're the ones that are saying they're coming back in. How is that not their right? So I've got their right. It's a fundamental right. So the question is, is it a vested right or not? Well, it seems like a really weird private property right. Can you sell it? Can you transfer it? Can you assign it to somebody else? This is a weird— When I think of the classic property bundle of sticks, this is a weird right, right? There's a lot of weird rights, Your Honor. I mean, a lot of the intangible rights are very strange. I mean, you have a right to exclude certain people in copyright, not other people in copyright. You have easements that sometimes you have a right to exclude people, sometimes you don't. I think it's complicated. And at the end of the day— I can sell a copyright. I can assign a copyright. I can sell an easement. I can assign an easement. I can inherit an easement. But you can exclude somebody else from your public education. We talked about that in a brief, right? If somebody else tries to check in as you in public education, they can't. You have a right to that. You have a right to not take a public education instead of go to a private education. You pay for things, right? Property taxes funds all this. That's how the system works. So I think— Your Honor, to the extent you had damages, yes. The reality is people—the reason why we don't see these cases is because the government doesn't do this. The government doesn't— The government doesn't violate the fundamental right to marry, and it did, apparently, until very recently. Well, if we're talking— Until Berger fell, we were violating all kinds of people's fundamental right to marry. Fair enough, Your Honor. I guess nobody thought about bringing it as a takings claim. But I would say to you, you know, if you have a right to a jury trial, it's not like we say, oh, well, you know, there just weren't that many jurors that showed up today, so you don't get a jury trial right. You get a jury trial right. As a general matter, the state executives don't violate fundamental rights that are in the Bill of Rights. I mean, again, I think we go back to—this is a Constitution we're expounding. We've got a right to education that is directly in the Virginia Constitution. Typically, and I think prior to now, there hasn't been a wholesale revocation of that right prior to COVID. Thank you. Thank you. Mr. Clark. Thank you, Mr. Cafferty. We are going to come down and greet counsel and proceed to the next case.
judges: James Andrew Wynn, Pamela A. Harris, Toby J. Heytens